Now, I think it's quieted down. I assume, Mr. Ellsner, this was not caused by reading the briefs in this case, but we are ready to hear an oral argument now in the case of United States v. Charles. Thank you, Your Honor. May it please the Court, Evan Ellsner, on behalf of the appellant, Erick Charles. In the order subject to appeal, the district court held that the gun, case, and ammunition improperly admitted at trial should have been suppressed, and the government has not cast any doubt on that finding or pointed to any error in Judge Zagel's factual or legal conclusions. The government's brief, as I understand it, argues that Judge Zagel was wrong and their search was supported by probable cause. Have I totally misunderstood them? Yes, Your Honor, you are, because the government's brief isn't actually addressing Judge Zagel's ruling at all. It's actually asking you to affirm Judge Anderson's ruling based on statements made – based on Sergeant Baranowski's testimony at trial. It doesn't point to any actual – If the search is supported by probable cause, then Judge Zagel's ruling is wrong. There's no doubt whatever. The thing under review is not Judge Zagel's ruling or Judge Anderson's ruling. It is the judgment, right? That's correct, Your Honor. That's the thing under review. The government asks us to affirm it, and part of their argument is the search did not violate the Fourth Amendment. In order for the government to address that, the government would have needed to either demonstrate based on the factual findings by Judge Zagel that there was probable cause or that the Plain View Doctrine applies, or it would have needed to demonstrate that there was clear error in Judge Zagel's factual findings. The government doesn't do either. In fact, it asks this Court to read the trial transcript, to read Sergeant Baranowski's testimony, and make its own credibility determinations about Sergeant Baranowski and what he saw and seen. I don't understand Judge Zagel's ruling to be reshuffling the factual findings. I think he just reached a different conclusion on suppression. Judge Zagel reached numerous factual findings there. Well, he said a whole lot, but I don't know that anything is in the nature of a new set of factual findings. He wasn't the judge who actually heard any of the evidence. He didn't withdraw the credibility finding that Judge Anderson had entered into with respect to the complaining witness. I mean, it's just a difference of opinion between two district judges on whether the evidentiary facts warranted suppression or not. Judge Zagel conducted an additional post-trial suppression hearing in which he actually made a credibility determination after hearing Sergeant Baranowski's testimony for himself. And he made certain findings about Sergeant Baranowski's testimony and his credibility. In particular, he said that Sergeant Baranowski's testimony was unclear and inconsistent. But he didn't hear from the other officer? He didn't hear from the complaining witness? I mean, that's not what happened at the do-over. That's correct. He didn't hear from them at the suppression hearing. And he talked at great length about having reviewed carefully and taken into consideration the entire transcript of the original suppression hearing and the ruling. Right. He considers the post-trial suppression hearing testimony as well as the trial transcript. And he came to his own conclusions about Sergeant Baranowski's testimony. And his conclusions were that the testimony was inconsistent and unclear. I thought the basis of his suppression ruling was not discrepancies in the testimony, but the fact that the gun case could have been something else. It was indistinctive, I think was his word, or not distinctive enough to be a gun case, and therefore suppression was warranted. That was the basis of his ruling. That's correct, Your Honor, and I agree with him on that aspect of his ruling. If the victim's complaint provided probable cause to believe that there was a gun around, that ruling is irrelevant. That's correct, but the complaint did not provide probable cause to search Mr. Charles's vehicle. In particular, if somebody says, I saw X with a gun, and the police stop X and don't find a gun on his person, doesn't that lead to a reasonable belief that the gun is someplace else, near that person, in his car, for example? That's correct, Your Honor, but the difference here is that the eyewitness says, I saw X. Unfortunately, there was no actual confirmation that Mr. Charles was X. Mr. Charles was just a man on the street. Didn't he fit the description? I'm sorry? Did he not fit the description that the dispatcher provided to the officer? There was a partial match of the description. The description is very vague. The description says he was bald, light complexioned, African-American, in jeans and a plaid shirt. That's pretty good if you're there within a matter of seconds. Mr. Charles isn't African-American. He's Hispanic. This is a partial match, and there's no confirmation. Sergeant Paranazzi doesn't actually go over and get confirmation from the eyewitness that this was the man that she had called about, and there's no corroboration that this is the man based on the car. The dispatch call. Why is any of that required for probable cause? Because in cases where there's probable cause to search a vehicle, you need to know that this is the person that you're looking for in the cases that the government cites, in particular. You are arrested on probable cause on the basis of one eyewitness's description all the time, and we keep hearing arguments that in order to make an arrest or a search on probable cause, the police have to conduct an investigation, and we keep rejecting that. You just made the same they had to make a larger investigation argument again. It's not the way the law works. Mr. Ellsner, can I ask you, what color metal was the gun that was recovered from the car? The gun that was recovered from the car has a black handle with a silver edge on the back of the handle. Do we have that in the record somewhere, photographs? Yes, there are photographs in the record. Okay. Thank you. The car also matches the description, too. Is there also a photograph of Mr. Charles somewhere in the record? No, there isn't. Testimony about his ethnicity? If you look to, for example, the pre-sentencing report, it describes his ethnicity. And to address your point about the car, there was actually no description of a vehicle in the dispatch call. Sergeant Baranowski recalled that the dispatch had provided a description of the vehicle, but then if you look to the actual dispatch call, there's no description of a vehicle at all, let alone a vehicle that matched Mr. Charles' car. The only thing that's mentioned in the report from dispatch is that there was a man with a gun. That's it. And the physical description of the man. So if I can direct your attention to the issue of harmlessness, once Judge Zagel found that the gun case and ammunition should have been suppressed, the improper admission of a gun at a trial on a gun charge can't be harmless, and it almost goes without saying. If you're being convicted of illegal possession of an object and that object is admitted at trial, it's not harmless. And improperly admitted evidence is not harmless where there's a reasonable possibility that it might have contributed to the conviction. And here in the Seventh Circuit, we have the additional requirement that other evidence of guilt must be overwhelming. And a constitutional violation cannot be upheld unless it's proven that it's harmless beyond a reasonable doubt, and the burden is on the government. Judge Zagel applied a different standard when determining harmless error. He asked whether Judge Anderson's statement in his ruling was a factual finding or dicta, but that's not the standard, and whether or not that was a factual finding or dicta doesn't demonstrate whether this was harmless or not. Because regardless of his finding, there's still a reasonable possibility that the gun and the other physical evidence might have contributed to his ruling. We know that it had independent value in verifying the underlying possession charge, but we also know that there's a reasonable possibility that it might have contributed to his assessment of the eyewitness's credibility because it corroborated her story. And on that basis, we cannot find that this was harmless error. Well, Judge Anderson opened his ruling finding your client guilty by saying, it seems to me, I believe, Mr. Charles, that Ms. Summarized, the complaining witness, testified truthfully in that she did see a gun in your possession. That alone would find you guilty of the crime. And then he went on to consider the rest of the facts. That's correct, Your Honor, but when making an insistent, when making a remark like that, we do not just rely on the remark without looking to the remaining evidence in the record supporting guilt. Just because this is a bench trial doesn't mean that we forget about the harmless error standard. The harmless error standard requires the other evidence in the record be overwhelming. And if you look to a similar case at the government sites, United States v. Lee, the district court did make a similar remark, albeit it was a bit more forceful than Judge Anderson's remark. But the court, the Seventh Circuit didn't rest on the insistent remark alone. It looked to the remaining evidence in the record and said, the remaining evidence strongly corroborates this, strongly evidences guilt, and therefore the district court's statements are well-founded. And we can't just take these statements at face value because if we did in a bench trial, every time there was a challenging decision about the admissibility of a piece of evidence, a judge could say, well, I'm admitting the evidence, but I would have ruled the same way regardless. And then their decisions would be appeal-proof. In this case, because we used the overwhelming other evidence of guilt standard, we can actually use this as a fail-safe to make sure that the actual remarks are well-founded. I thought your basic point was that Ms. Summarize's testimony was pretty shaky to begin with. And without corroboration from the actual finding of a gun, it would have been pretty hard to credit her beyond a reasonable doubt. That's correct. So in this case, if we look to the remaining record to see what other evidence there is of guilt, all we have is some shaky testimony from an eyewitness that she thought she saw a silver-like handle, and then we have testimony from the responding officer directly undermining that, saying that he observed Mr. Charles with a bulge at his side, and when he patted him down, it was revealed to be a cell phone clip. And on that basis, that scant record, we cannot find that there's overwhelming evidence of guilt aside from the gun. Could I take you back to the United States v. Ross question, probable cause to search the car? Is there anything else you want to add on that? The United States v. Ross is another example where there was an indication where the police officer was not just responding to a physical description of the person, knew that the person that they found was the person they were looking for because of the corroboration based on the description of the vehicle. And on that basis, they could make an arrest and had probable cause to make an arrest. I see that I'm into my rebuttal time, but I'd also like to point out that we still have an argument to consider regarding the timeliness of the motion for new trial, and we would remind you that in failing to address Mr. Charles's argument of excusable neglect, the district court failed to exercise its discretion with regard to that particular finding, and therefore the proper course would be to vacate and remand for a new new trial determination. I'm a little unclear on the chronology here. Judge Zago allowed the motion for the new trial and actually heard it. That's correct. So why are we fighting over whether he did or didn't do that? Because what happens is Judge Zago allows the motion, and post-trial counsel proceeds to file a motion for new trial based on an understanding that that was timely. A year, Judge Zago says, I'm not going to rule on timeliness. Let's go ahead and conduct a suppression hearing. He conducts a suppression hearing for a year afterwards, and then at the tail end after suppressing the gun and the other evidence, he says, I'm inclined to find that it's also untimely. And it was at that point that he makes that finding that post-trial counsel realized that she needed to raise an excusable neglect argument to demonstrate that it was timely. But what do you want to go back and re-litigate? We're not. I mean, you got to litigate your motion, so the untimeliness ruling was totally superfluous. I agree that it was superfluous, but the problem is that with an untimely motion for new trial, when Judge Zago ruled that it was untimely, which maybe was an incorrect ruling in and of itself, when Judge Zago ruled that it was an untimely motion, he didn't grant the new trial partially on that basis. And so Mr. Charles is still going to be without a new trial. Mr. Charles is still serving a 15-year sentence. And the sentence here was imposed more than four years after the finding of guilt, correct? That's correct. Excuse me, a little over three years. Four years. Thank you, Mr. Elshner. Your time has expired, but we'll give you one minute for rebuttal. Thank you. Mr. Block. May it please the Court, my name is Stephen Block. I represent the United States. This Court should affirm the denial of the motion for new trial not only because it was untimely, by over two and a half years, but because the motion to suppress the firearm lacked merit and the evidence was properly admitted at trial. The evidence was properly admitted for several reasons, the first of which was that there was absolutely probable cause to search the defendant's vehicle based on the totality of the circumstances known to the officer at the time. In addition, the gun case was in plain view on the front seat of defendant's car and to the officer it was immediately apparent that that gun case could be connected to criminal activity based on what he already knew in responding to the call. Third, the evidence would be admitted under the inevitable discovery doctrine. Even Judge Zagel, who disagreed with the admission of the weapon. This is the first I've heard of inevitable discovery. Did I miss something? No, Judge. We did not mention that inevitable discovery in our brief. However, we do cite to the fact that Judge Zagel said that the officer could have gotten a warrant. That's a little bit different. Okay. That's better for you just arguing there's a probable cause basis for the search. Let's not go in the direction of inevitable discovery, I don't think, anyway. Judge, we do agree that there was probable cause for the search based on everything that the officer knew at the time. Can I ask you to help me connect some dots here? Since we are now so many years later after Heller, after McDonald, after subsequent litigation about carrying guns in public, did the officer receive any indication in the dispatch that the witness had been threatened with a gun? Yes. The dispatch called and referred that she was scared. That there's a man. That's a little different. If I call today and say I'm scared of somebody who's carrying a gun into a McDonald's restaurant or something of that sort, whether I've been threatened or not. The call said that a woman was calling. It was Ms. Summerize. It gave the address. It said that she was in the alley. She couldn't get out. The man had a gun. She was scared and gave a description. Okay. So no threat? No overt threat. I think one could interpret. Communicate. Well, yeah. Okay. And then so is the premise here that the mere possession at that time was a crime for just about everybody within the city limits? No, Judge. I think what the officer was responding to was the woman felt threatened. I think it's reasonable for the officer to believe that there was perhaps an assault in progress if she felt threatened and described a man with a gun. So you don't think there was any indication of a crime without knowing? Well, I mean, okay, there's a man with a gun. Somebody's scared. If that happens today, is that probable cause to arrest? Search? I think it would depend more on the description in the call. In this particular call at the time, I think it was readily reasonable for the officer to assume that someone was being threatened with a gun based on the context of that call. Does a threat matter in your view? This search took place in 2008 when every possession of a gun was a crime in Chicago. I agree. I don't think it matters in this case. Just having a gun was a crime. My understanding of the law at the time was yes, but in this case, there was something more than that. That's, of course, what led to McDonald, the very fact that Chicago had made it illegal to have a gun within city limits. At the time, Judge, it was legal, but the officer knew more than that. The officer was responding to a specific call. And in regards to the description. Well, in Wisconsin, at least, people have got a constitutional right to do what Mr. Charles was doing, except for his felony convictions. Judge, I don't know the law. Are you saying Wisconsin? Yep. I'm sorry. I can't state that I know the law in Wisconsin on this issue. But at the time, the officer was responding because he reasonably believed that the victim was being threatened. She didn't just say, I see a man with a gun. She said that she's scared. And she's scared. Correct. Now, that's, in our post-Heller, post-McDonald world, that's not nearly enough to arrest somebody or start searching their cars or to frisk them or anything else. I agree, in 2008, mere possession was presumptively a crime. That's your basis. Nothing more. No, Judge. I believe the basis was the officer is responding because he knew more than mere possession. Do you want us to issue a decision today that says if somebody calls and says, there's a man with a gun, I'm afraid of him, that that's probable cause to frisk him, search him, search his car, that's enough? Well, it was more than just being threatened. She described in the call the circumstance, that she was in the alley. She couldn't back up. He was yelling at her. She was afraid. It was more detail than simply a man with a gun. And when the officer responds to the scene at that point, what he sees, and he responded very quickly, he was in the neighborhood. He was there within a matter of moments. And what he saw then closely matched what had been in the call. The description of the man was a light-skinned African-American, bald, wearing blue jeans and a plaid shirt. That was the description. Now, it turns out the man, I believe, was of Hispanic background, but the description is pretty solid when the officer gets there seconds later and he sees exactly that man coming out of a car that is parked sort of askew into a busy street on Howard. At that point, the officer did conduct a brief investigation. He spoke with the victim and said, is that the man who threatened you with the gun? She said, yes. Once the officer had backup and the defendant was detained, he walked over to the car. It is our view that he did have probable cause at that point based on that set of facts in 2008 to search the car and any container where a gun could be inside. However, even if the court was to find there was not probable cause, we believe the search was still valid because when the officer walked over, he saw a gun case in plain view on the front seat. The officer testified at the suppression hearing and bench trial that he recognized the gun as a gun case because he had the same exact gun case. He had been an officer for 20 years. He knew immediately it was a gun case. Judge Zagel had some findings about that. Judge Zagel... He knows a lot about guns, too. I've heard that he does, Judge, yes. And a lot about police work. Yes, Judge. Judge Zagel believed the case was not that distinctive. We disagree with that rationale. Yeah, but we have a finding on that point. It is, for our purposes, not that distinctive. Judge, we also have Judge Anderson saying that it was distinctive, and we do disagree with Judge Zagel on that point. Does it really matter, though? No, I don't believe that it does matter. Not if there was probable cause, it doesn't matter. I believe there's probable cause. In addition, there are two other reasons that the court could affirm the denial of the motion for new trial. The first, of course, is that it was untimely. Speaking of timeliness, what happened to this case and why? The court has its own responsibilities. And when was Mr. Charles taken into custody? Mr. Charles was indicted in October 2008. He would have been taken into custody by the state authorities sometime shortly before that. I don't recall the exact date, Your Honor. It would have been shortly before that. The federal indictment was in late October of 2008? Yes. And he's been in custody ever since? Yes. At the very least, the fact that nobody was trying to get a sentencing is very troubling and tends to corroborate his argument now that he was effectively abandoned by his post-trial counsel. I don't believe that it does corroborate that, Judge. How does somebody languish for more than four years between a finding of guilt and sentencing? I think what the record reflects in this case, Your Honor, is Mr. Charles had five separate sets of attorneys representing him in this case that he had disagreements with throughout the proceeding from the very beginning to the very end. He filed motions to have those attorneys dismissed. He also filed numerous pro se motions. What was the government doing during that time? The government, we're doing our best to advance this as we could. I did file a motion for a status hearing at one point to try and get back in front of the court. How many years had passed before that happened? That happened in April, I believe, of 2012, Judge. So that's more than two years afterwards. And I understand the argument that maybe the motion for a new trial might be untimely, but the least, the party who seems least responsible for the delay was Mr. Charles. Judge, in addition to the numerous requests for new counsel, there also was a change in the district judge due to Judge Anderson's retirement. I'm fully aware of all that going on. I know that Judge Zagel also had a pretty big trial going on during these years. And I think that all contributed to the delay. That all being said, Judge, you're the prosecutor, and you've got a guy, you've got a guilty finding and no sentencing for more than four years. It's very troubling. And, Judge, I agree the government would like to have gotten this case sentenced sooner. There's no doubt about that. But when it comes back to whether the defendant had a fair trial, whether the gun was properly admitted, and whether his motion was untimely, we don't believe that those arguments are meritorious. The motion was untimely. His trial counsel did file a motion for judgment of acquittal within the time frame. They elected not to file a motion for new trial. There's no abandonment there. It's an election. Do we have any record to that effect? That they filed the motion for? No. Whether counsel was on a mental vacation, I don't know how one addresses that one way or the other without holding an evidentiary hearing in which you bring in the lawyers and ask them to explain their action or inaction. Judge, there's nothing in the record. I gather that didn't happen. No. There's nothing in the record to explicitly state what was in the mind of counsel. I agree with that. But my point was simply that within the deadline, counsel did file a post-trial motion, and they did file one and not the other. And then there was new counsel, an extended deadline, and no action by that counsel. No action with regard to filing a post-trial motion. Or to getting sentencing or doing anything, right? Again, Judge, I can only look at the docket. I would not, of course, be privy to what counsel may have been doing in his conversations with the defendant. But after Mr. Metchik came on the case, that's correct. There was no sentencing, and he did not file a motion. However, we don't believe that necessarily results in abandonment. Let me suggest this. I think it would be a travesty for this case to be decided on the theory that the defendant missed a deadline. Okay? There are other reasons and other issues that we can take up, but that one would have a level of savage irony to it that I think would be intolerable. Well, it's also a little unorthodox in the way it was handled. And to the extent that there's some grasping at untimeliness here, it was sort of an afterthought by Judge Zagel. After he'd heard the motion, granted suppression, found the admission of the physical evidence to be harmless, and affirmed the verdict that he said, oh, by the way, that motion was untimely. That's unorthodox. One ruling is either superfluous or the other is advisory. I understand your point, Judge. There are a lot of unorthodox things. I don't understand why the government didn't file a petition for a writ of mandamus when Judge Anderson said he wasn't going to hold a pretrial suppression hearing. We did not do that, Judge. It was outrageous behavior. Judge, the motion to suppress was filed 11 months after the deadline that had been set by the court. Right. So there are two options. One is that motion could be denied as untimely. The other option is the hearing could be held before trial. As it happens, you seem to be happy that the judge denied the motion, but the government regularly insists that these be before trial so that you don't have double jeopardy problems. Everybody seems to have slept through a lot of problems in this case. Judge, with regard to the motion to suppress filed before trial, it was filed a week before trial. At that point, the defendant asked for a bench trial, and Judge Anderson said he would agree to the bench trial. The double jeopardy clause applies to bench trials. No, I understand, Judge. My point is that the defendant was not forced into anything. The defendant had a choice. This is not a question of the defendant being forced. I asked why the United States did not file a petition for a writ of mandamus. Judge, we did not consider that at the time. I think if you look in the U.S. Attorney's Manual, you'll see that as recommended procedure when a judge refuses to hold a pretrial suppression hearing. Judge, with regards to the choice that was ultimately made, though, the defendant argues that he was not forced into this procedure. This is not a question whether the defendant was forced into anything. I don't think you're grasping the potential double jeopardy problem. Judge, I see my time has expired unless there's a further question in the court. Thank you very much. If I could just ask very briefly, when was it that you all first raised the Ross theory? That the gun was- That there was probable cause for the search? In response to the motion to suppress that was filed prior to trial. I thought the first I'd seen it was in your motion asking Judge Zagel to reconsider the grant. No, we filed a written response to the motion prior to trial. Thank you. Thank you, Mr. Block. Anything further, Mr. Elsner? Yes, very briefly. I just wanted to remind the court, first of all, that we, as appellate counsel, agree that the record here is very troubling. And I'd like to just kind of point your attention really briefly to the probable cause determination. What we have here, based on the findings, is a man on the street not acting suspiciously with a partial match of the description and no confirmation that this was the guy that they were looking for. And based on those facts, there's only a reasonable description or a reasonable suspicion, excuse me, based on articulable facts. This is a stop and frisk at best. And when the pat-down revealed that there was no gun on his person, this dispelled any reasonable suspicion that Mr. Charles was the man with the gun. And it dispelled any belief or reasonable trustworthiness of the eyewitness that there was a gun at all. Did the officer talk to Ms. Summarize? The officer testified that he did. And Ms. Summarize testified numerous times throughout the trial that she did not speak with the officer, that at no point did she identify. So who made a finding on that question? Judge Zagel did not make a finding as to that issue. All he said was that maybe Ms. Summarize said something about a gun. Did Judge Anderson make a finding on whether the officer spoke to her? Judge Anderson said that both of their testimonies were credible. So he didn't make a specific finding as to this issue. Thanks. Thank you very much, Mr. Elsner. We appreciate your willingness and that of your firm to accept the appointment in this case. The case is taken under advisement. Thank you.